IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GARY W. HOLLAND | ) | |
| | ) | |
| v. | ) | No. 3:05-0348 |
| | ) | Judge Nixon/Brown |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security | ) | |

To: The Honorable John T. Nixon, Senior Judge

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits (DIB) and supplemental security income (SSI), as provided under Titles II and XVI of the Social Security Act, as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 9), to which defendant has responded (Docket Entry No. 13). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion for judgment be DENIED, and that the decision of the Commissioner be AFFIRMED.

I. INTRODUCTION

Plaintiff's current DIB and SSI applications were filed in August 2003 (Tr. 63-65, 393-95). These applications were denied at the initial and reconsideration stages of agency review

1

(Tr. 24-27, 396-97, 402-03). Plaintiff thereafter requested and received a hearing before an Administrative Law Judge (ALJ), held on August 19, 2004 (Tr. 408-440). Plaintiff appeared with counsel and gave testimony, as did an impartial vocational expert (VE). On October 12, 2004, the ALJ issued a written decision on plaintiff's claims, wherein it was determined that plaintiff was not disabled (Tr. 13-19). The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's bipolar disorder and post traumatic stress disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity to perform work at any exertional level.

7. The claimant is unable to perform his past relevant work.

8. The claimant is a "younger individual."

9. The claimant has a high school education.

10. The claimant can not perform his past relevant work.

11. The claimant has a semiskilled and unskilled work background.

12. The claimant's transferable skills are immaterial.

13. Using Section 200.00(e) as a framework for decision making, a significant number of jobs exist in the national economy which could be performed, considering the residual functional capacity and vocational factors. Examples of such jobs include: cleaning/janitor jobs, motel houseman, farming/forestry, and groundskeeper.

14. The claimant has not been under a disability through the date of this decision.

(Tr. 18-19).

On March 26, 2005, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 5-7), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II. REVIEW OF THE RECORD

Plaintiff alleges his impairments arose after witnessing a graphic car accident in March 2000 (Tr. 14, 204, 262). Dr. William Kenner, who performed a psychiatric evaluation of plaintiff for a workman's compensation claim, provided a Medical Source Statement on May 7, 2001 (Tr. 14, 203, 261-290).

3

Dr. Kenner noted signs of post traumatic stress disorder (PTSD) (Tr. 14, 203-04, 286-88). It was noted that plaintiff began to smoke marijuana after the accident (Tr. 14, 270, 288). Dr. Kenner reported that plaintiff had "survivor's guilt," which plaintiff could decrease through therapy and medication (Tr. 14, 286). Therapy and medication would also assist plaintiff in rebuilding his vocational and social life (Tr. 14, 287, 290). Dr. Kenner assigned plaintiff a global assessment of functioning (GAF) score of 50, denoting serious symptoms,[1] and suggested psychiatric hospitalization after the initial interview (Tr. 14, 267).

Plaintiff was hospitalized three times during the period at issue, twice in 2001 and once in 2003. Plaintiff was admitted for inpatient treatment from May 14 through June 8, 2001, at the Psychiatric Hospital at Vanderbilt (Tr. 14, 208-226, 269). Dr. Glenn Yank diagnosed plaintiff with PTSD, mood disorder, and marijuana dependence (Tr. 14, 208, 270). Doctors assessed plaintiff with a GAF of 50 upon discharge (Tr. 14, 210). Psychiatrist W. Scott West, M.D., began treating plaintiff after Vanderbilt discharged him on June 8, 2001 (Tr. 372).

Plaintiff was hospitalized at Center Parthenon Pavilion for 5 days from June 15 through June 19, 2001, after expressing

---

[1] <u>Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)</u> at 32 (4th ed. 2000).

4

suicidal thoughts to his psychiatrist (Tr. 14, 227-234, 270). Although plaintiff denied substance abuse, the record indicates that plaintiff smoked marijuana on a daily basis during this time (Tr. 14, 230, 232). Attending psychiatrist, Dr. James Hart, diagnosed plaintiff with PTSD (Tr. 14, 227). Plaintiff denied suicidal ideation at discharge and expressed an ability to continue therapy on an outpatient basis (Tr. 14, 228). Dr. Hart assessed plaintiff with a GAF score of 65 upon discharge, denoting mild symptoms (Tr. 14, 227).

Dr. West did not see plaintiff again until August 2002. He then treated him through November 2002 (Tr. 362-372). Dr. Kenner evaluated plaintiff on December 3, 2002, at plaintiff's attorney's request for purposes of a workman's compensation claim and to recommend treatment (Tr. 261).

Over the four years that Dr. West treated plaintiff, a gap in treatment exists from December 2002 through August 11, 2003 (Tr. 16, 361-62). Plaintiff returned to Dr. West, stating that he was doing much better and had not refilled his medications during the two months prior (Tr. 16, 361).

In 2003, plaintiff was hospitalized at Vanderbilt for five days from December 8 through December 12, 2003 (Tr. 14, 293-305). Although plaintiff complained of feeling suicidal, he admitted to not having taken his medications three weeks prior to admission (Tr. 14, 298). Plaintiff reported smoking marijuana on

5

a daily basis (Tr. 14, 299). Plaintiff had no evidence of psychosis on discharge and was assigned a GAF of 65 (Tr. 14, 293-96).

Pamela Auble, Ph.D., provided forensic psychological screening of plaintiff for his treating psychiatrist and attorney from May 2001 through November 2002 (Tr. 15, 250-59). On October 16, 2002, Dr. Auble administered a personality assessment inventory, a test which indicates plaintiff's portrayal of himself (Tr. 15, 252, 254-55). Dr. Auble's report indicates that while most people take two to three hours to answer the questions on the personality inventories, plaintiff finished the 962 test questions in about an hour (Tr. 252, 255). She re-administered the tests on November 22, 2002 (Tr. 252). The test results indicated exaggeration and malingering (Tr. 15, 258). Dr. Auble reported that plaintiff's answers on the Minnesota Multiphasic Personality Inventory-2 indicated that his portrayal of himself and his problems was so overly negative that the clinical scales could not be interpreted with accuracy (Tr. 252, 255, 258). Although plaintiff responded consistently to the Personality Assessment Inventory (PAI) questions, his portrayal of himself was so bleak that it could not be seen as objective or realistic (Tr. 252, 255). The interpretive computer program warned that the answers were unlikely to be accurate and involved considerable distortion (Tr. 15, 253). Dr. Auble noted that when

6

she first tested plaintiff in 2001, he had a tendency to over-exaggerate his problems (Tr. 15, 255).

On October 27, 2003, plaintiff began treatment with Cumberland Mental Health Services (Tr. 15, 330-35). Upon admission, plaintiff reported that he attended Volunteer State Community College full time for a degree in communications and he enjoyed paintball and camping (Tr. 15, 333). He was assigned a GAF of 55, denoting moderate symptoms (Tr. 15, 334).

Katheryn Sherrod, Ph.D., performed a consultative examination of plaintiff on December 16, 2003 (Tr. 15, 306-310). Dr. Sherrod implemented a structured interview of reported symptoms (SIRS) that indicated definite feigning of symptoms, and she pointed out that some of plaintiff's responses were questionable (Tr. 15, 308). For example, when asked if he exaggerated his psychological problems, plaintiff admitted that he did so "only when the doctors piss[ed] [him] off" (Tr. 15, 308). He admitted to "keeping the doctors guessing" when they did not cooperate with him (Tr. 15, 308). He admitted to smoking marijuana (Tr. 15, 307, 309). Plaintiff reported adequate interaction with his roommates and relatives (Tr. 15, 310).

After testing, Dr. Sherrod reported that plaintiff's ability to understand and remember were not significantly limited, his ability to concentrate was mildly limited, and his social and adaptive skills were, at worst, mildly limited (Tr.

15, 310). She indicated that without drug screening, it was not possible to determine how may of plaintiff's symptoms were drug-related (Tr. 309). His responses to the Structured Interview of Reported Symptoms indicated that he exaggerated his symptoms and minimized his strengths (Tr. 309). Dr. Sherrod reported that because plaintiff exaggerates his symptoms and admitted to marijuana use, the agency should appoint a representative payee if plaintiff were to receive benefits (Tr. 310). Dr. Sherrod reiterated that validity testing indicated that plaintiff feigned or exaggerated symptoms of mental illness (Tr. 310). She diagnosed him with malingering and cannabis abuse, and assigned a GAF score of 60, denoting moderate symptoms (Tr. 15, 310).

James Walker, Ph.D., completed a Psychiatric Review Technique form in conjunction with state agency review on December 30, 2003 (Tr. 311-324). After reviewing plaintiff's medical records, Dr. Walker diagnosed him with an anxiety disorder and cannabis abuse (Tr. 16, 311, 324). Dr. Walker assessed plaintiff as having mild limitations with respect to his activities of daily living, maintaining social functioning, and concentration, persistence and pace, with no episodes of decompensation (Tr. 16, 321). Dr. Walker noted that plaintiff's PTSD was very similar to malingered PTSD, and the SIRS and PAI tests indicated near 100 percent probability of malingering (Tr. 16, 323).

8

In a January 19, 2004 treatment note from Cumberland Mental Health Services, plaintiff reported being discharged from Vanderbilt after overdosing on Klonopin (Tr. 329). He updated his history with the therapist after not having been seen since October 2003 (Tr. 328). Plaintiff was registered for 18 credit hours at Volunteer State that semester (Tr. 328).

A January 19, 2004 psychiatric evaluation indicated that plaintiff had chronic PTSD, recurrent major depressive disorder, and a current GAF of 55 (Tr. 327). A January 22, 2004 addendum to the psychiatric evaluation indicated that a pharmacy called to report that plaintiff was trying to fill a prescription for Klonopin, the same medication plaintiff had obtained the day before upon Dr. West's prescription (Tr. 15, 328). The Cumberland Mental Health Services prescription was canceled and a note was made to discuss this event with plaintiff at his next visit (Tr. 328).

Dr. West provided a Medical Source Statement dated January 29, 2004 (Tr. 15, 338-350). Dr. West opined that plaintiff was unable to work due to persistent anxiety, depression, and decreased concentration and focus (Tr. 15, 338). He listed plaintiff's symptoms as mood disturbance, recurrent panic attacks, suicidal ideation, social withdrawal and hostility (Tr. 15, 343). Dr. West assigned a GAF score of 55, denoting moderate symptoms (Tr. 343). Dr. West also reported, however,

9

that plaintiff was pursuing a higher education, drove to class on a daily basis, participated in his father's business, and attended flea markets and auctions (Tr. 351, 354, 356-68, 362-63).

Dr. West assessed plaintiff as having marked limitation in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace, with three or more episodes of decompensation (Tr. 15, 340-41, 345-46). Dr. West assessed plaintiff with a fair ability to follow work rules, use judgment, function independently, maintain attention and concentration, and maintain personal appearance (Tr. 16, 348-49). He assessed plaintiff with poor ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, carry out complex and detailed job instructions, behave in an emotionally stable manner, relate predictably, and demonstrate reliability (Tr. 16, 348-49).

Dr. James McFerrin performed a consultative examination of plaintiff on July 9, 2004 (Tr. 16, 376-383). After examination, Dr. McFerrin reported plaintiff's concentration and memory to be fair, with no short-term or long-term memory deficits (Tr. 16, 379). Dr. McFerrin noted that plaintiff's activity and interest level appeared to be returning as plaintiff was remarried with a child on the way, attended college, tended to a garden, and handled daily chores (Tr. 16, 380). Dr.

10

McFerrin diagnosed plaintiff with bipolar affective disorder, PTSD, and marijuana abuse, and assigned a GAF of 55 (Tr. 16, 379).

Dr. McFerrin also completed a medical source statement of ability to do work activities (Tr. 16, 382-83). He opined that plaintiff does not have any limitation in the ability to understand, remember, and carry out instructions; slight limitation in interacting appropriately with co-workers; and moderate limitation in interacting appropriately with the public and supervisors, responding appropriately to work pressures, and responding appropriately to changes in a routine work setting (Tr. 16-17, 382-83).

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as

11

a reasonable mind would accept as adequate to support the conclusion." Her v. Commissioner, 203 F.3d 388, 389 (6th Cir. 1999)(citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985).

        B.    Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process, as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
(2) If the claimant is not found to have an impairment which

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.
(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
(5) Once the claimant establishes a prima facie case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid can not be used to direct a conclusion, but only as a guide to the disability determination. Id. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

13

claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. See Varley v. Secretary, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. § 423(d)(2)(B).

C. Plaintiff's Statement of Errors

Plaintiff alleges that the ALJ erred in failing to find disability or otherwise explain his analysis at the third step of the sequential evaluation process, pursuant to listing 12.06 (Anxiety Related Disorders); in failing to defer to the opinion of treating psychiatrist Dr. West, that plaintiff's functional limitations were of disabling severity; and, in failing to analyze plaintiff's nonexertional complaints pursuant to Duncan v. Sec'y of Health & Human Svcs., 801 F.2d 847 (6th Cir. 1986). As explained below, the undersigned finds no error in the ALJ's decision.

With all due respect to plaintiff's arguments, every one of them is severely undermined by the clinical test results

14

showing to a virtual certainty that plaintiff is malingering. Indeed, plaintiff has admitted to exaggerating his symptoms when it suits him (Tr. 308). While the record does not support a finding that plaintiff's psychological symptoms are altogether feigned, it quite clearly supports the ALJ's finding that his psychological functioning is only moderately limited (Tr. 18). While Dr. West ostensibly would not agree with this finding, defendant points out that Dr. West himself indicated only moderate functional difficulties when he assigned a GAF of 55 (Tr. 343). This inconsistency between the GAF rating and other, more dire functional assessments given by Dr. West would justify a reduced level of deference to his opinion even without the evidence of malingering, not to mention the contrary opinions of Drs. Auble, Sherrod, Walker, and McFerrin. Moreover, the undersigned finds no error in the ALJ's finding of no listing-level impairment, since the clinical evidence suggests that any treating source's record of the medical findings and clinical support needed to establish the criteria of listing 12.06 may well have been based on fabricated symptoms. See Johnson v. Barnhart, 390 F.3d 1067, 1070-71 (8th Cir. 2004). Thus, the undersigned finds no legal error in the ALJ's treatment of the issue of whether a listing was met or equaled, his decision to discount the opinion of Dr. West, or his analysis of plaintiff's subjective allegations.

15

While plaintiff has clearly suffered from his exposure to the human carnage described in the notes of his examiners, the record also depicts a man who has some degree of difficulty complying with prescribed treatment, who has sporadically if not consistently abused marijuana despite his ongoing regimen of legal medications, who was at one point enrolled in full-time coursework at a community college, and who by his own admission and the confirmation of clinical test results exaggerated his symptoms. Not under any stretch of the definition of "substantial evidence" could the ALJ's decision be deemed insufficiently supported.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further

appeal of this Recommendation.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

       **ENTERED** this 7th day of March, 2006.

                                       /s/ Joe B. Brown
                                       JOE B. BROWN
                                       United States Magistrate Judge

17

Case 3:05-cv-00348   Document 14   Filed 03/06/06   Page 17 of 17 PageID #: 77